UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAFTEY MANAGEMENT SYSTEMS, INC.,

                          Plaintiff,

       -against-                         10 Civ. 1593 (RJH)

                          **MEMORANDUM OPINION**
                             **AND ORDER**

SAFETY SOFTWARE LIMITED,

                          Defendant.

      Plaintiff, Safety Management Systems, Inc. ("SSM") moves for a preliminary injunction to require defendant, Safety Software Limited ("SSL") to immediately deposit the source code for certain software in escrow with plaintiff's counsel, Scarola Ellis LLP ("Scarola Ellis"), pursuant to escrow agreements signed in April 2009. For the reasons stated below, plaintiff's motion is denied.

## BACKGROUND

      SSL is a UK-based company which develops a software product known as "Airsweb." SMS is a small American company which acquired the exclusive license rights to sell the Airsweb software in North America pursuant to an August 2006 agreement with SSL (the "License Agreement"). In accordance with the License Agreement, SMS sold the software to seven North American companies (the "U.S. Licensees"). In April 2009, escrow agreements were entered into between SMS and SSL jointly as the "developer" of the software, SMS's counsel Scarola Ellis as escrow agent, and the U.S. Licensees (the "April 2009 Escrow Agreements"). Under these agreements, the developer represented and warranted that "it [was] depositing [the software] with escrow agent." (*See* Ducker Decl. Ex. C, ¶ 11.) The April 2009

Escrow Agreements provide that in the event of certain "triggering events" such as a bankruptcy filing by SSL—none of which appears to have occurred here—the source code for the software would be delivered by the escrow agent to the U.S. Licensees. (*See id.* ¶ 6.) These agreements appear to have been entered into to protect the U.S. Licensees by ensuring that if the software developer went out of business, the U.S. Licensees would be able to access the source code and continue to use the software, thereby avoiding potentially costly business disruptions that might result from a sudden inability to access to the software. Although the April 2009 Escrow Agreements provided that the "developer" was depositing the source code in escrow upon the signing of the agreements (*see id.* ¶ 11), SSL, the holder of the source code, did not deposit the source code in escrow with Scarola Ellis upon signing the April 2009 Escrow Agreements, and has not done so to date.

SMS and SSL's relationship deteriorated over the years. SMS alleges, among other things, that SSL has not lived up to its customer support obligations; that SSL engaged in a number of improper billing practices vis-à-vis SMS; and that recently, SSL has surreptitiously moved the hosting of the U.S. Licensees' data from an agreed upon server in Texas to an allegedly less secure server in Virginia. SSL, on the other hand, argues that SMS owes it approximately £400,000; that SMS made promises to the U.S. Licensees that it was not authorized to make under the terms of the License Agreement; and that SMS has concocted this motion seeking to compel deposit of the source code with Scarola Ellis in bad faith in order to obtain the source code for its own self-interested commercial purposes.

The present motion was filed on March 17, 2010. The requested relief is narrow. SMS does not seek to enjoin SSL from taking all the actions SMS claims to be improper (*e.g.*, billing practices, transfer of the U.S. Licensees' data to a new server, etc.). SMS seeks solely to compel

2

SSL to deposit the source code in escrow with Scarola Ellis pursuant to the April 2009 Escrow Agreements.  SMS argues that the injunction is necessary at this juncture because SSL has become insolvent, such that there is a grave risk that the U.S. Licensees will suffer imminent harm if SSL goes bankrupt and they do not have access to the source code.[1]

SSL appears to have no issue with placing the source code in escrow for the benefit of the U.S. Licensees in the event one of the "triggering events" occurs; however, SSL vehemently objects to placing the source code in escrow *with Scarola Ellis* (SMS's counsel) because SSL believes SMS seeks to obtain the data for improper purposes.  Since the filing of the motion, SSL has entered into new escrow agreements with a UK-based escrow agent for the benefit of the U.S. Licensees and has deposited a current version of the software that each Licensee is operating with the UK escrow agent.  At the Court's suggestion, SSL has also amended the UK escrow agreements to provide for dispute resolution in New York under New York law in an attempt to provide the Licensees with substantially the same protection that the April 2009 Escrow Agreements afforded them.  (*See* Jones Supp. Decl. Exs. A, B, C.)

## DISCUSSION

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted).  Under Second Circuit law, a party seeking a preliminary injunction must demonstrate a likelihood of irreparable harm in the absence of an injunction, and either (a) a likelihood of success on the merits or (b)

---

[1] Shortly after the motion was filed, SMS sent an email to SSL informing SSL that it was terminating the License Agreement.  (*See* Ducker Decl. Ex. F.)  SSL argues that because SMS has terminated the License Agreement, SMS must cooperate with SSL to promptly terminate the licenses sold to the seven U.S. Licensees and must also return certain property and information to SSL pursuant to the terms of the License Agreement.  SMS maintains, on the other hand, that the U.S. Licensee's licenses to use the software are perpetual and do not end with the termination of the License Agreement between SMS and SSL.  For purposes of this opinion, the Court need not and does not decide which view is correct.

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund*, 598 F.3d 30, 35-38 (2d Cir. 2010).

A likelihood of irreparable harm absent entry of a preliminary injunction is the "single most important prerequisite for the issuance of a preliminary injunction." *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citations omitted). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (internal quotation marks and citations omitted). Thus, it is inappropriate to issue a preliminary injunction "based only on a possibility of irreparable harm." *Winter v. Natural Resources Defense Council*, --- U.S. ---, 129 S.Ct. 365, 375-76 (2008). Where an adequate legal remedy exists, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances. *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

The Court finds that SMS has not made a sufficient showing that it is likely to suffer irreparable harm if the Court does not enter a preliminary injunction requiring SSL to place the source code in escrow with Scarola Ellis pursuant to the terms of the April 2009 Escrow Agreements. The thrust of plaintiff's argument appears to be that the U.S. Licensees face the prospect of imminent irreparable harm as a result of SSL's failure to place the source code in escrow with Scarola Ellis. However, to the extent that SMS seeks to vindicate the rights of the U.S. Licensees, SMS does not appear to be the proper party to raise such claims. If SMS's customers believe that they will suffer imminent irreparable harm due to the fact that SSL has

4

substituted a different escrow agreement with a UK escrow agent (which appears to provide substantially the same protection to the U.S. Licensees as the April 2009 Escrow Agreements), they may take action against SSL themselves.  As a far as the Court is aware, no U.S. Licensee has taken legal action against SSL to date, and no U.S. Licensee has appeared before the Court in this action.

    SMS also argues that SMS itself will suffer irreparable harm if the Court does not issue the requested injunction.  However, SMS's dispute with SSL appears to be a fairly typical contract dispute, and the harm SMS alleges it will suffer is primarily financial and can be adequately addressed through monetary damages.  *See KMW Intern. v. Chase Manhattan Bank, N.A.*, 606 F.2d 10, 15 (2d Cir. 1977) ("Since KMW's damages are financial in nature or, at best, of a speculative quality, a preliminary injunction should not have issued.").  While a court may find irreparable harm in circumstances where, but for an injunction, there is a substantial chance that upon conclusion of the litigation the parties cannot be returned to the positions they previously occupied—for example, because the defendant is insolvent—*see Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999), SMS has not met its burden to show that SSL faces a sufficient risk of imminent insolvency to justify issuance of a preliminary injunction on this basis.  *See Vantico Holdings S.A. v. Apollo Mgmt., LP*, 247 F.Supp.2d 437, 454-55 (S.D.N.Y. 2003) ("The risk of potential insolvency. . . [is] too unsubstantiated to warrant the granting of a preliminary injunction."); *Meringolo v. Power2ship*, No. 03 Civ. 4476, 2003 WL 21750009, at *3-5 (S.D.N.Y. July 28, 2003); *Fluor Daniel Argentina, Inc. v. ANZ Bank*, 13 F.Supp.2d 562, 564-65 (S.D.N.Y.1998); *Gladstone v. Waldron & Co.*, No 98 Civ. 2038, 1998 WL 150982, at *2 (S.D.N.Y. Mar. 31, 1998).

SMS also argues that SSL's conduct jeopardizes its goodwill with its customers since it may get sued by its customers as a result of SSL's failure to deposit the source code in escrow with Scarola Ellis.  However, that concern appears to be wholly speculative, at least with respect to issues relating to the escrow agreements themselves.  The Court is simply not persuaded on the present record that the fact that SSL has decided to place the source code in escrow with a UK escrow agent pursuant to a new escrow agreement, rather than placing the source code in escrow with Scarola Ellis pursuant to the April 2009 Escrow Agreements, jeopardizes SMS's relationship with its customers or threatens the viability of SMS's business.  *See Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09 Civ. 237, 2009 WL 790312, at *7 (E.D.N.Y. Mar. 23, 2009) ("Envision has not demonstrated that the very viability of its business is threatened absent an injunction . . . speculative and conclusory allegations [of loss of reputation and goodwill] are insufficient to establish irreparable harm."); *Vesuvius USA Corp. v. Curtis*, No. 01 Civ. 383E, 2001 WL 640694 (W.D.N.Y. June 6, 2001) ("because plaintiff has failed to show, beyond mere speculation or conjecture, how it will be irreparably harmed in the absence of an [injunction], such an order will not issue."); *National Football League Players Ass'n v. National Football League Properties, Inc.*, No 90 Civ. 4244, 1991 WL 79325, at *4 (S.D.N.Y. May 7, 1991) (plaintiff's conclusory statements of loss of goodwill and/or reputation were insufficient to establish a likelihood of irreparable harm to goodwill).  In other words, SMS has not made a *clear showing* that irreparable harm is *likely*, and therefore its motion must be denied.  *See Winter*, 129 S.Ct. at 375-76; *Mazurek,* 520 U.S. at 972.

Finally, the Court notes that even if SMS had shown a likely irreparable harm, the Court would nonetheless deny the motion because SMS has not shown that it is likely to succeed on the merits of its underlying contract claims, or that the balance of hardships tips decidedly in SMS's

favor. *See Citigroup Global Markets,* 598 F.3d at 35-38. These contested issues should be decided upon a trial on the merits.

## CONCLUSION

For these reasons, SMS's motion for a preliminary injunction is denied.

SO ORDERED.

Dated: New York, New York
      May 5, 2010

                                                Richard J. Holwell
                                                United States District Judge