Court Exhibit

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                          :
SAFETY MANAGEMENT SYSTEMS, INC.           :
                                          :       10 Civ. 1593
                        Plaintiff,        :
                                          :
            v.                            :
                                          :
SAFETY SOFTWARE LIMITED,                  :
                                          :
                        Defendant.        :
---------------------------------------- X
                                          :
SAFETY SOFTWARE LIMITED,                  :
                                          :
                Counterclaim Plaintiff,   :
                                          :
            v.                            :
                                          :
SAFETY MANAGEMENT SYSTEMS, INC., and      :
CHRISTEIN DUCKER,                         :
                                          :
                Counterclaim Defendants.  :
---------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 0 7 2012

## JURY CHARGES

October ___, 2012

# Table of Contents

I.  GENERAL INSTRUCTIONS.......................................3
    A.  Role of the Court .....................................3
    B.  Role of the Jury ......................................4
    C.  Evidence ..............................................5
    D.  Credibility of Witnesses ..............................8
    E.  Burden of Proof ......................................10
II. CHARGES...................................................11
    A.  Breach of Contract ...................................11
        1.  Formation of a Contract...........................12
        2.  Performance and Non-Performance...................13
        3.  Damage............................................14
        4.  Material Breach...................................15
        5.  Both Sides Are Alleging the Other Breached the Contract 17
        6.  SMS's Breach of Contract Claim(s) Against SSL..........18
        7.  SSL's Breach of Contract Claim(s) Against SMS..........22
    B.  Quantum Meruit .......................................25
    C.  SSL's Claim of Personal Liability of Ducker (Piercing the Veil)....................................................27
        1.  Corporate Veil Piercing: Generally...................27
        2.  Veil Piercing: First Element: Existence of Domination..29
        3.  Veil Piercing: Second and Third Elements: Use of Domination to Commit a Fraud or Wrong .....................31
        4.  Veil Piercing: Fourth Element: Balancing the Purposes of Limited Liability ......................................34
III. DAMAGES .................................................36
    A.  Consider Damages Only If Necessary ...................36
    B.  Purpose of Damages ...................................37
    C.  Breach of Contract Damages ...........................39
    D.  Set-Off ..............................................40
    E.  Breach of Contract: SMS' Claim for Lost Profits .........41
    F.  Breach of Contract Damages: SSL's Claims ..............43
    G.  Quantum Meruit Damages ...............................44
    H.  Duty to Mitigate Damages .............................45
IV. CONCLUDING REMARKS........................................46

I.   **GENERAL INSTRUCTIONS**

　　A.   <u>**Role of the Court**</u>

　　　　You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.  My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.

　　　　On these legal matters, you must take the law as I give it to you.  Regardless of any opinion that you may have as to what the law may be--or ought to be--it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.  If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

### B.  Role of the Jury

Your role is to pass upon and decide the fact issues that are in the case.  You, the members of the jury, are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

In determining the facts, you must rely upon your own recollection of the evidence.  You should bear in mind particularly that a question put to a witness is never evidence.  It is only the answer which is evidence.  Remember also that you are not to consider statements that I struck or told you to disregard.  That stricken or excluded testimony is not evidence and may not be considered by you in rendering your verdict.

C.  **Evidence**

The evidence before you consists of the answers given by witnesses and the exhibits and stipulations that were received into evidence.

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  One kind of direct evidence is a witness's testimony about something he or she knows by virtue of his or her own senses--something the witness has seen, felt, touched or heard.  Direct evidence may also be in the form of an exhibit.

The other type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Assume that the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Somebody else then walks in with a raincoat that is also dripping wet.

Now, you cannot look outside the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of the facts that

I have asked you to assume, it would be reasonable and logical --though not necessarily required--for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.

Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.  Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that you, the jury, decide the facts in accordance with the preponderance of all the evidence, both direct and circumstantial.

Here, you have heard testimony from plaintiff, both defendants and a number of witnesses.  I will expand on this in a moment, but I want to stress that you are the sole judges of the credibility of these witnesses and you weigh the evidence. You must look at the facts as objectively as you can--and it is within your role as jurors to draw reasonable inferences from these objective facts.

Finally, let me state a final point: when you are determining issues of fact you are weighing the evidence--you

6

are determining whether evidence should be given no weight, some weight or a lot of weight.  Any evidence that you are relying upon should be credible based on your judgment of all relevant facts and circumstances.

### D.   Credibility of Witnesses

Now for the important subject of evaluating testimony.  How do you evaluate the credibility or believability of the witnesses?  The answer is that you use your plain common sense. Common sense is your greatest asset as a juror.  You should ask yourselves: Did the witness impress you as honest, open and candid?  Or did the witness appear evasive or as though the witness was trying to hide something?  How responsive was the witness to the questions asked on direct examination and on cross-examination?

If you find that a witness is intentionally telling a falsehood, that is always a matter of importance that you should weigh carefully.  If you find that any witness has lied under oath at this trial, you should view the testimony of such a witness cautiously and weigh it with great care.  It is, however, for you to decide how much of the witness's testimony, if any, you wish to believe.  Few people recall every detail of every event precisely the same way.  A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such inconsistencies are significant or inconsequential, and whether to accept or reject

all or to accept some and reject the balance of the testimony of any witness.

## E.  **Burden of Proof**

Before I instruct you on the issues you must decide, I want to define for you the standard under which you will decide whether a party has met its burden of proof on a particular issue.  The standard that applies in this case is the preponderance of the credible evidence.

To establish by a preponderance of the credible evidence means that the evidence of the party having the burden of proof must be more convincing and persuasive to you than that opposed to it.  The difference in persuasiveness need not be great: so long as you find that the scales tip, however slightly, in favor of the party with the burden of proof--that what the party claims is more likely than not true--then that element will have been proved by a preponderance of the credible evidence.

## II.  CHARGES

### A.  <u>Breach of Contract</u>

In this action, each party seeks damages against the other for breach of contract.  Generally speaking, a contract is an agreement between two or more persons to do a certain thing or things.  A breach of contract is a failure to perform a contract.  In order to succeed on a claim for breach of contract, either party must prove by a preponderance of the evidence that a contract existed and that the other party breached that contract.  More specifically, the elements of a claim for breach of contract are:

<u>First</u>, formation of a contract between the parties.

<u>Second</u>, performance by one party.

<u>Third</u>, the other party's failure to perform; and

<u>Fourth</u>, resulting damage.

I will discuss each of these elements.

1.    Formation of a Contract

A contract is a legally enforceable agreement to do or not to do something. There can be written or oral contracts. There are two contracts at issue in this case. First, the parties do not dispute the existence of a valid written contract between them--that is the License Agreement.

However, SMS asserts that it had a separate, oral contract with SSL for SSL to reimburse SMS for hosting fees that it had paid while the License Agreement was in effect. It is up to you to determine whether SMS has proven the existence of such an oral contract by a preponderance of the evidence. To find that a contract exists, SMS must prove two things.

First, SMS must prove by a preponderance of the evidence that the parties agreed on essential terms of the contract regarding repayment of hosting fees--meaning that there was an offer, acceptance, and consideration. The concepts of offer and acceptance are self-explanatory. Consideration means the giving of something of value. Let me give you an example: if businesspeople each agree to do one thing in exchange for something else, that would be consideration.

Second, SMS must prove by a preponderance of the evidence that there was a meeting of the minds between SMS and SSL about the terms of the hosting-fee contract, as well as a mutual intent to be bound by the terms of the oral contract.

12

2.    <u>Performance and Non-Performance</u>

The next two elements of a cause of action for breach of contract are that one party performed its obligations under the contract and the other party did not.  Performance simply means that the party did what it had promised to do in the contract. Failure to perform, or non-performance, means that the party did not do what it had agreed to do in the contract.

Let me give you a simple example:  say you enter a contract with a friend to buy his hat for $5.  To fulfill your obligation under that contract you have to pay $5--that payment constitutes your performance.  For your friend to fulfill his obligation under the contract, your friend needs to provide you with the hat.  If, however, you pay your friend $5 and he does not give you a hat, you have performed and he has failed to perform.

Here, it is for you to determine what each party had promised to do under the contract and whether it did it.

3.    <u>Damage</u>

Finally, for either party to prevail on a breach of contract claim, it must prove the fourth element: that the party was damaged by the other's failure to perform--that is, to do what that party promised to do.

In our hat example, if your friend provided you with the hat and you did not pay him the agreed $5, he would have suffered damage.  The reverse is also true.  If you provided your friend with the $5 and he never provided you with the hat, you would have been damaged.

I will provide further instructions on how to calculate and determine damages in a moment.

4.    Material Breach

Under New York law, if one party to a contract fails to
perform its obligations under a contract in some minor way, that
minor failure may not relieve the other party of its obligation
to continue to do that which it promised to do under the
contract.  For instance, in our hat example, if you and your
friend entered into a contract to exchange a hat for $5 at 3:00
p.m. and the hat is delivered at 3:01 p.m., it is unlikely that
the one minute difference would mean that you no longer had to
pay the $5.

A party's performance under a contract is only excused in
instances when the other party has committed what the law refers
to as a "material breach."  For a breach to be material, the
breach must go to the heart of the agreement between the
parties.  Put another way, material breach occurs when one party
substantially fails to perform its side of the bargain.  Again,
in our hat example, if you agreed to pay $5 for a red hat and
explained to your friend that red is an important color for you,
and your friend tries to give you a green-and-blue polka dotted
hat, that would be a material breach.

If you determine that either or both parties breached the
contract, you must next determine whether the breach was
material.  To determine whether any breach in this case was
substantial enough to be material, you may consider a number of

15

factors:  how significant the failure to perform was; the effect
of that party's failure to perform on the contract's overall
purpose; how willful the breach was; and how much the injured
party had in fact already benefitted under the contract prior to
the breach.

     If you find that one party materially breached the written
License Agreement or the alleged oral contract for repayment of
hosting fees, you may find that the other party was relieved of
its obligation to perform any further under that agreement.  In
other words, if you find that SSL committed any one of the
breaches alleged by SMS, and that the alleged breach was
material, you may find that SMS did not have to perform its
obligations under the contract.  Similarly, if you find that SMS
committed any one of the breaches alleged by SSL, and that the
alleged breach was material, you may find that SSL did not have
to perform its obligations under the contract.

5.   <u>Both Sides Are Alleging the Other Breached the</u>
<u>Contract</u>

Let me go over that point I just made again.  Here, both parties allege breach of contract by the other party: SMS alleges that SSL breached the License Agreement and an alleged oral contract relating to hosting fees, and SSL alleges that SMS breached the License Agreement.  It is possible for you to find that one party breached a contract, that both parties breached a contract, or that neither party breached a contract.

In a moment, I will review the specific breaches that each side alleges the other committed.

### 6.   SMS's Breach of Contract Claim(s) Against SSL

With respect to SMS' breach of contract claims, SMS must prove by a preponderance of the evidence that first, an oral contract for repayment of hosting fees existed; the parties agree that the License Agreement was a contract.  Next, if SMS has carried its burden of proof in that regard, you must determine whether SMS has proven by a preponderance of the evidence that it complied with its obligations, in all material respects, under both contracts at issue:  the oral agreement relating to the repayment of hosting fees and the License Agreement.

If SMS did not fulfill its material obligations under the contracts prior to the time of any alleged breach by SSL, then SMS cannot prevail in its breach of contract claims against SSL (because SMS would, in effect, have breached the contract(s) first, relieving SSL of its obligation to perform).  Put another way, if SMS cannot show that it performed or was ready, willing, and able to do anything material that the contracts required of it prior to SSL's alleged breach, then SMS cannot prevail on its breach of contract claims.

SMS claims SSL breached the License Agreement both before the agreement was terminated and after it was terminated, in the following ways:

a.    refusing to cooperate with SMS in the formation
of new contracts with new clients after January
1, 2010, unless SMS (i) made payments, and
(ii) made amendments to the parties' existing
agreement, none of which SMS was obligated to
make;

b.    delaying or denying service by SSL to SMS
customers, after January 1, 2010, unless SMS
(i) made payments and (ii) made amendments to the
parties' existing agreement, none of which SMS
was obligated to make;

c.    demanding a new (more favorable) contract from
SMS, in place of the parties' existing agreement,
by use of coercive tactics, including that SMS
(i) make payments and (ii) make amendments to the
parties' existing agreement, none of which SMS
was obligated to make;

d.    overbilling and rendering false or unwarranted
invoices to SMS and, after January 1, 2010,
insisting on payments of amounts not due to SMS
under such invoices;

e.    overbilling and rendering false or unwarranted
invoices to SMS and doing so without accounting

for any set-off or recoupment of the hosting fees
SMS had paid on behalf of SSL;

f.  overbilling and rendering false or unwarranted
invoices to SMS and doing so without accounting
for any set-off or recoupment of the hosting fees
SMS had paid on behalf of SSL and, after January
1, 2010, insisting on payments of amounts not due
to SMS under such invoices;

g.  refusing to comply with agreements SSL had
entered into to place the AIRSWEB source code in
escrow;

h.  as of early March 2010, after commencement of
this lawsuit, locking SMS out of all of the
shared SMS and SSL systems necessary for SMS to
service existing customers and pursuing new ones,
even after SMS demanded such access be restored;

i.  after March 14, 2010, unilaterally moving SMS's
hosted customer data from arrangements under
contract by SMS and under SMS's control to other
arrangements under SSL's exclusive control; and

j.  after March 14, 2010, unilaterally moving SMS's
hosted customer data from arrangements under
contract by SMS and under SMS's control to other
arrangements under SSL's exclusive control

without consent of SMS customers or of SMS
itself.

SMS claims that SSL breached the oral contract relating to repayment of hosting fees by not repaying the hosting fees.

It is up to you the jury to decide whether SMS has proven by a preponderance of the evidence whether SSL breached either or both contracts in the ways SMS alleges based on the evidence that has been presented to you.

If you find that SMS has proven by a preponderance of the evidence that SSL did not adequately perform its obligations under one or both contracts, but that SMS did perform its obligations under the contracts, then you must consider whether SMS has proven by a preponderance of the evidence that SSL's breaches were material. If you find that SSL materially breached one or both contracts and that SMS performed its obligations under the contracts, then you should find that SMS has proven the particular breach of contract you are considering. You must consider each contract separately.

7.    <u>SSL's Breach of Contract Claim(s) Against SMS</u>

With respect to SSL's breach of contract claim, SSL must prove by a preponderance of the evidence that it complied with its obligations under the License Agreement, in all material respects.  If SSL did not fulfill its material obligations under the terms of the Agreement prior to the time of any alleged breach by SMS, then SSL cannot prevail in its breach of contract claim against SMS (because SSL would, in effect, have breached the contract first, relieving SMS of its obligation to perform). Put another way, if SSL cannot show that it performed or was ready, willing, and able to do anything material that the Agreement required of it prior to SMS' alleged breach, then SSL cannot prevail on its breach of contract claim.

SSL claims that SMS breached the License Agreement in the following ways:

a.    not paying SSL for technical assistance it provided to SMS' customers at SMS' request pursuant to Section 5 of the Agreement;

b.    not providing royalty statements pursuant to Section 9 of the Agreement;

c.    not paying SSL royalties on a quarterly basis within 30 days of the end of each quarter pursuant to Section 9 of the Agreement;

d.    not paying SSL interest due to it under Section 9
of the Agreement for its late payments;

e.    exploiting AIRSWEB products, in ways not
authorized under Section 2 of the Agreement;

f.    not obtaining insurance coverage to indemnify SSL
against all or any costs, claims, damages or
expenses SSL incurred as a result of any breach
of any of SMS' obligations under the Agreement,
in violation of Section 3 of the Agreement;

g.    encouraging its employees to steer work to SSL's
competitor--Rivo Software--and away from SSL to
Rivo while the Agreement was still in effect, in
violation of Section 3 of the Agreement; and

h.    permitting and encouraging its employees to
provide Rivo with SSL's confidential information,
in violation of Section 8 of the Agreement.

It is up to you the jury to decide whether SSL has proven
by a preponderance of the evidence that SMS breached the
Agreement in the ways SSL alleges based on the evidence that has
been presented to you.

If you find that SSL has proven by a preponderance of the
evidence that SMS did not adequately perform its obligations
under the Agreement, but that SSL did perform its obligations
under the Agreement, then you must consider whether SSL has

proven by a preponderance of the evidence that SMS's breaches were material.  If you find that SMS materially breached the Agreement and that SSL performed under the Agreement, then you should find that SSL has proven a breach of contract by a preponderance of the evidence.

**B.   Quantum Meruit**

Both SMS and SSL have claimed that even if it did not breach a particular contract, it is nevertheless entitled to "quantum meruit." "Quantum meruit" translates into a phrase that means "the amount deserved." The legal doctrine of quantum meruit allows compensation for a party who performs services for another without a contract so long as the party provided services in circumstances implying that both parties understood that the performing party would be paid.

SSL claims that if you find that SMS did not breach the License Agreement, it is nonetheless entitled to recover under a theory of quantum meruit. SMS claims that if you do not determine that it had an oral contract with SSL regarding repayment of hosting fees, then it is entitled to repayment under a quantum meruit theory.

To prove their respective quantum meruit claims, each party must prove by a preponderance of the evidence the following four elements:

First, that it performed the services in good faith;

Second, that it expected to be compensated, and that such expectation was reasonable;

Third, that the other party accepted the services; and

Fourth, that the circumstances were such that it would be inequitable for the other party to enjoy the benefits of its services without compensating it.

If either party fails to prove any of these four required elements by a preponderance of the evidence, you must find the other party not liable on the quantum meruit claim. If, however, a party proves each of the four elements by a preponderance of the evidence, then you must find the other party liable on the quantum meruit claim.

However, the existence of a valid contract covering the same subject matter of a quantum meruit claim precludes recovery for quantum meruit. If you find that the oral agreement relating to repayment of hosting fees did not exist or that the License Agreement does not cover the money each party alleges it is owed, or that the amount of compensation was unclear, then the party may recover on its quantum meruit claim, if it has otherwise proven the necessary elements.

C.    **SSL's Claim of Personal Liability of Ducker (Piercing the Veil)**

1.    Corporate Veil Piercing: Generally

SMS is a corporation owned by Christein Ducker.  Ducker was also an officer of SMS.

As a general rule, owners of a corporation are not liable for a corporation's debts.  That is because corporations have their own legal identities, and are assumed to operate independently of their shareholders, officers, and directors.  This separate identity is sometimes referred to as a "corporate shield."  We also refer to this shield protecting corporate shareholders, officers, and directors from liability as the "corporate veil."  The fact that a corporation can generally shield its shareholders, officers, and directors from liability serves to encourage business development.  Under certain circumstances, however, a court may pierce through--or get through--the corporate veil and thereby hold the shareholders, officers, and directors of a corporation personally liable for the corporation's debts.

Here, SSL claims that the corporate veil of SMS should be pierced and, thereby, that Ducker should be held personally liable for SMS' debts.  In order to prevail on this veil piercing claim, SSL must prove by a preponderance of the evidence that:

27

(1)  Ducker exercised complete domination over SMS;

(2)  Ducker used such domination to commit a fraud or
     wrong;

(3)  that the fraud or wrong injured SSL; and

(4)  the need to protect those who dealt with SMS,
     including SSL, outweighs society's interest in
     honoring SMS's corporate form.

2.    <u>Veil Piercing: First Element: Existence of</u>
      <u>Domination</u>

To determine whether an individual dominates a corporation, you may consider factors that tend to show a corporation is dominated, such as the following:

(1)    the absence of the formalities that are part and parcel of the corporate existence, such as the issuance of stock, election of directors, and the keeping of corporate records;

(2)    inadequate capitalization, that is, whether the corporation had sufficient funds to manage its business and pay its debts, and whether it had adequate funds in relation to the nature of the business of the corporation and the risks that business necessarily entails;

(3)    whether the individual put in or took out funds from the corporation for personal rather than corporate purposes;

(4)    the role the individual played in corporate affairs, including whether she owned the corporation or served as an officer, director, or employee of the corporation;

(5)    whether the individual and corporation shared office space, or an address and telephone number;

(6)  the amount of business discretion displayed by the
     corporation independent of the influence of the
     individual;

(7)  whether the individual dealt with the corporation at
     arms' length;

(8)  whether the corporation and the individual functioned
     as if they were independent profit centers;

(9)  whether the individual paid or guaranteed debts of the
     corporation; and

(10) whether the individual used corporate property as if
     it were his own.

When a corporation is dominated by an individual it means
that it operates as a mere instrumentality of the individual,
and it is the individual and not the corporation who is the real
actor.

3.    Veil Piercing: Second and Third Elements: Use of
Domination to Commit a Fraud or Wrong

In terms of the second element of a veil piercing claim,
SSL must prove by a preponderance of the evidence that Ducker,
through her alleged domination of SMS, abused the privilege of
doing business in the corporate form to perpetrate a wrong or
injustice against SSL.  The wrong or injustice can include a
breach of a legal duty, or a dishonest or unjust act.

SSL asserts that the wrong or injustice Ducker engaged in
was the nonpayment of royalties and other monies SSL alleges
were required that SMS should have paid it under the License
Agreement or under its quantum meruit theory.

In order for SSL to prevail on this claim, it must prove by
a preponderance of the evidence that Ducker's domination of SMS
has been used to commit a fraud or wrong.  To make the required
showing, SSL first must prove by a preponderance of the evidence
that SMS owed royalties or other monies to SSL.  If you do not
find that SSL has met its burden of showing that royalties or
other monies were owed to SSL by SMS, you must stop there and
find no liability on this issue.

However, if you find that SMS in fact owed royalties and/or
other monies to SSL, then you must determine whether Ducker so
dominated SMS as to be personally liable for failure to make
such payments.  You need not find that Ducker's domination

caused the non-payment of <u>both</u> the royalties and other monies
allegedly owed under the License Agreement, but you must find
that her domination of SMS caused of one of those two things
(<u>e.g.</u>, royalties <u>or</u> other monies allegedly owed), and you must
be unanimous as to which one.

In this context, what does it mean to "cause" something to
happen?  SSL must prove by a preponderance of the evidence that
Ducker caused SMS not to pay royalties and/or other monies
allegedly owed by showing that Ducker's domination of SMS was a
substantial factor in bringing about the alleged non-payment of
such royalties and monies.  That is, if Ducker's actions had
such an effect in producing the non-payment that a reasonable
person would regard her actions as a cause of the injury, then
SSL has met its burden on this issue.

It is not necessary for Ducker's conduct to be the sole or
even dominant cause of such non-payment in order for her to be
personally responsible for such payments if all of the other
elements of this claim have been met.  You should understand
that there can be more than one cause operating separately or
together with others so as to cause the injury to SSL, and each
may be regarded as a cause as long as each is a substantial
factor in bringing about the injury.  Of course, not every
injury that follows an action necessarily results from that
action.  SSL has the burden of proving by a preponderance of the

evidence that any injury you find it suffered was caused by

Ducker's domination of SMS.

4.    <u>Veil Piercing: Fourth Element: Balancing the</u>
      <u>Purposes of Limited Liability</u>

As I mentioned, corporations have their own identity under

the law, and are presumed to exist independently of their

shareholders, officers, and directors.  An important aspect of

this independence is that the corporation is liable for its own

debts.  If a corporation owes money on a contract, under normal

circumstances its officers, directors, and shareholders would

not be liable for that debt.  These important principles of law

help encourage investment in corporations and the development of

our economy.

But those who deal with corporations need protection, too.

Sometimes, we disregard the independence of the corporation and

hold its owners liable in order to protect investors or those to

whom the corporation owes a debt.  As we have been discussing,

this is called "piercing," or breaking through, the corporate

veil.  Essentially, it means disregarding the corporate

structure.

It is up to you to decide, given the totality of the

evidence as it has been presented to you, whether the facts of

this case justify piercing the corporate veil and therefore

holding Ducker personally liable for any damages you may find

SMS owes to SSL.  To make this decision, again, you must ask

whether this is a case where the need to protect those who dealt

with a corporation that was dominated by an individual to their detriment in the ways I have described outweighs the need to encourage the type of business development that occurs due to, in part, the limitations on personal liability that the corporate form provides.

## III. DAMAGES

### A.  <u>Consider Damages Only If Necessary</u>

If you conclude that a party has met its burden of proving liability with regard to a claim that it has asserted, then you must determine the damages to which it is entitled.  You should not infer that either party is entitled to recover damages merely because I am instructing you on how to calculate damages. It is exclusively your function to decide whether either party is liable to the other or any claim, and I am instructing you on damages only so that you will have guidance should you decide that damages are warranted.

## B.  Purpose of Damages

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a violation of one's legal rights.  If you find a party liable on a claim asserted against it, then you must award the other party sufficient damages to compensate it, for any injury caused by the conduct of the other party--and vice-versa.

The damages that you award must be fair and reasonable, that is, they should be neither inadequate nor excessive.  You should not award damages based on speculation, but only for those injuries that may have been proven according to the standards that I have described to you.

If you decide to award damages, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require a party to prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  Although you should make every effort to calculate damages with reasonable certainty, absolute certainty as to amount is not required.  In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.  In

calculating damages, do not add any amount for interest.   The

Court will do that automatically.

C.    **Breach of Contract Damages**

The basic principle of damages in a contract action is to leave the injured party in as good a position it would have been if the contract had been fully performed.  A party asserting breach of contract must establish by a preponderance of the evidence that the breach or breaches caused the damages claimed.

Therefore, for any alleged breaches you may have found one party or the other to have committed, you must tie them to certain damages--or amounts--claimed by the party you have determined has been injured by a breach of contract.  Please note that although the materiality of a breach is relevant to whether or not a party may cease performing under a contract, it is not a requirement for determining whether a party may receive compensation for a breach.  As a result, you may also award damages for non-material breaches if you find that a party was damaged by the other party's non-material breach.

39

### D.  <u>Set-Off</u>

If you find that one party breached the License Agreement and that it owes money damages to the other, you should bear in mind that the breaching party may have already paid the other party some of what is owed under the particular contract.  This is called a "set-off."  If you find by a preponderance of the evidence that the breaching party in fact paid some amounts claimed by the other party under a contract, you may deduct those amounts from the total amount(s) owed.

### E.   Breach of Contract: SMS' Claim for Lost Profits

SMS' has alleged two types of damages claims:  (1) lost profits relating to revenues it did not receive for customers it had or believed it would have gotten but for SSL's alleged breach(es) of the License Agreement and future revenues relating to hosting fees for those customers; and (2) damages for repayment of hosting fees it asserts that SSL owed it pursuant to an oral contract.

Let's discuss the claim for lost profits.  Loss of profits as damages for breach of contract are permitted if the party proves that (1) such damages were caused by a breach; (2) the loss is capable of proof with reasonable certainty; and (3) the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

As I said a moment ago, here, SMS is claiming lost profits derived from two separate revenue streams: (1) future royalties that it can no longer collect from the U.S. customers to which it licensed or was reasonably likely to license AIRSWEBS software but for SSL's alleged breach of contract; and (2) loss of its mark-up on the hosting charges it received from its customers.

To find that SMS is entitled to lost profits, you must find: (1) that SMS demonstrated with reasonable certainty that profits derived from lost royalties and the hosting charges were

caused by SSL's breach; (2) the alleged lost profits derived from royalties and loss of hosting charges are capable of proof with reasonable certainty; and (3) the SMS' receipt of future royalties and hosting charges were fairly within the contemplation of both SSL and SMS at the time the License Agreement and/or oral contract were entered into.

If you find, however, that SMS was operating "at a loss," it cannot be awarded damages for lost profits because there is no history of profits on which to base an award.

**F.    Breach of Contract Damages: SSL's Claims**

SSL's damages claim consists of the royalties allegedly not paid by SMS and the other monies allegedly owed to it by SMS under the License Agreement.  Specifically, SSL alleges that it is owed **[INSERT - PROVIDED BY SSL]** for the technical assistance it provided to SMS' customers at SMS' request, **[INSERT - PROVIDED BY SSL]** in royalty payments never made, and **[INSERT - PROVIDED BY SSL]** for the royalty payments lost as a result of SMS' and Ducker's steering business to Rivo Software.  Although SSL has made claims for the amounts I just described, you must still determine the amount by which SSL proved it was damaged by a preponderance of the evidence.

SSL also claims interest on the late royalty payments made by SMS.  Although you do not need to calculate the amount of interest, if you found that SMS made late royalty payments to SSL, you must determine the amount of royalty payments that SSL has proven by a preponderance of the evidence were made belatedly.  You need not calculate interest itself; if necessary, the Court will do that.

### G.  <u>Quantum Meruit Damages</u>

SMS and SSL have both made claims for damages under a doctrine called "quantum meruit."  As I discussed with you earlier, quantum meruit allows compensation for a party who performs services for another without a contract so long as the party provided services in circumstances implying that both parties understood that the performing party would be paid.

If you have found that either party proved its quantum meruit claim by a preponderance of the evidence and that it proved that a contract does not cover the subject matter of its quantum meruit claim, you may consider whether that party proved the reasonable value of the services that it performed.  The party asserting the claim for damages for quantum meruit is required to prove the reasonable value of its claim by a preponderance of the evidence.

### H.  <u>Duty to Mitigate Damages</u>

A party which has suffered injury as a result of a breach of contract has a duty to use reasonable diligence and reasonable means, under the circumstances, to take advantage of any reasonable opportunity it may have to reduce or minimize its loss or damage.  It is an opposing party's burden, however, to prove by a preponderance of the evidence that the injured party could have lessened its damages or that its reasonable efforts would have reduced the damages.  The injured party is only required to make a reasonable effort to mitigate damages and does not need to take on additional risk, burden, or expense to do so.

If you determine that SSL breached the License Agreement or alleged oral contract (and that SMS had fully performed under either contract), you must determine if SMS could have--and did--mitigate its damages that resulted from that breach.  The same applies to SSL's ability to mitigate damages if you determine that SMS breached the License Agreement.

## IV.   CONCLUDING REMARKS

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.

Your decision must be unanimous.  You are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including the Court, at any time during your deliberations.  Finally, I say this, not because I think it is necessary, but because it is the custom in this courthouse to say this: you should treat each other with courtesy and respect during your deliberations.

During your deliberations, you will have the exhibits available to you.  You may also ask for portions of the testimony, but please try to be as specific as you can in requesting testimony.

If you have questions for the Court, just send me a note. As I said, you have a copy of this set of instructions to take with you into the jury room.

Your first task will be to select a foreperson.  The foreperson has no greater voice or authority than any other

juror but is the person who will communicate with the Court when questions arise.